2010 WY 63

**In the Matter of the ESTATE OF Larry Michael JOHNSON, Deceased.**

**Kelliann Johnson, Appellant (Respondent),**

v.

**Larry M. Johnson, Appellee (Petitioner).**

No. S–09–0040.

Supreme Court of Wyoming.

May 18, 2010.

Representing Appellant: Matthew A. Bartlett of Bartlett & Webster, Riverdale, Utah.

Representing Appellee: V. Anthony Vehar of Vehar Law Offices, P.C., Evanston, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] This is an appeal from a probate court order denying the petition of a decedent's wife (Wife) to revoke the appointment of the decedent's father (Father) as personal representative of the decedent for the filing of a wrongful death claim. Finding procedural error and an abuse of discretion in the denial of the petition, we reverse and remand for dismissal of the probate proceedings, and for such other and further proceedings that may be pursued by the parties.

## ISSUES

[¶ 2] 1. Does Wife have standing to challenge the appointment of Father as personal representative of the decedent to file a wrongful death claim?

2. Does the probate code govern appointment of a personal representative under the wrongful death act?

3. If the probate code does not govern appointment of a personal representative un-

der the wrongful death act, what does govern such appointment?

## FACTS

[¶ 3] Larry Johnson (the decedent) died on March 10, 2008. On September 18, 2008, Father petitioned the probate court to be appointed as the decedent's personal representative for the purpose of filing a wrongful death claim. The probate court granted Father's petition by an order entered on September 22, 2008. Wife filed a petition seeking revocation of that appointment on October 15, 2008. The probate court heard Wife's petition on November 25, 2008, and denied it by an order entered on January 6, 2009.

## DISCUSSION

***Does Wife have standing to challenge the appointment of Father as personal representative of the decedent to file a wrongful death claim?***

[¶ 4] Father did not raise below the question of whether Wife has standing to challenge his appointment as personal representative. Standing, however, is a jurisdictional issue, and it may be raised at any time. *Halliburton Energy Servs., Inc. v. Gunter,* 2007 WY 151, ¶ 10, 167 P.3d 645, 649 (Wyo. 2007); *Hicks v. Dowd,* 2007 WY 74, ¶ 18, 157 P.3d 914, 918 (Wyo.2007).

"Standing" is short for "standing to sue," which requires a "legally protectable and tangible interest at stake in the litigation." *Olsten Staffing Servs., Inc. v. D.A. Stinger Servs., Inc.,* 921 P.2d 596, 599 (Wyo.1996) (quoting *Black's Law Dictionary* 1405 (6th ed.1990)). The phrase "tangible interest" has been equated with the phrase "personal stake in the outcome." *Goshen Irrigation Dist. v. Wyo. State Bd. of Control,* 926 P.2d 943, 947 (Wyo.1996); *State ex rel. Bayou Liquors, Inc. v. City of Casper,* 906 P.2d 1046, 1048 (Wyo.1995). The person alleging standing must show a "perceptible," rather than a "speculative" harm from the action; a remote possibility of injury is not sufficient to confer standing. *Sinclair Oil Corp. v.*

*Wyo. PSC,* 2003 WY 22, ¶ 13, 63 P.3d 887, 894–95 (Wyo.2003).

*Halliburton,* 2007 WY 151, ¶ 11, 167 P.3d at 649. The question of standing is a legal issue that we review *de novo. Northfork Citizens for Responsible Dev. v. Park County Bd. of County Comm'rs,* 2008 WY 88, ¶ 6, 189 P.3d 260, 262 (Wyo.2008); *Halliburton,* 2007 WY 151, ¶ 10, 167 P.3d at 649.

[¶ 5] Father declares that Wife lacks standing to bring this appeal because Wife cannot prove that she will suffer any harm from Father's appointment as personal representative. Although we have said that "perceptible harm" is an aspect of the concept of standing, we have also used the phrases "personal stake in the outcome" and "tangible interest" in describing standing. *Jolley v. State Loan & Inv. Bd.,* 2002 WY 7, ¶ 6, 38 P.3d 1073, 1076 (Wyo.2002). Under those standards, we have no trouble declaring that Wife has standing to challenge Father's appointment. Wife is not only, herself, a potential personal representative and claimant under the wrongful death act, and in first priority as a probate administrator— a factor that will be discussed in more detail below—but she is also the mother of the decedent's two daughters, who also are likely claimants under the wrongful death act. Given the complexities of a wrongful death action, and given the fact—also to be discussed in more detail below—that the personal representative under the wrongful death act acts as a trustee for the claimants, Wife certainly has a tangible interest in the determination of who will act as personal representative, and she has a personal stake in the outcome of the petition contest.

***Does the probate code govern appointment of a personal representative under the wrongful death act?***

[¶ 6] It is necessary at the outset of this discussion to identify the statutes that underlie the dispute. Title 2 of the Wyoming Statutes is entitled "Wills, Decedents' Estates and Probate Code." Chapter 4 of Title 2, entitled "Intestate Succession," provides the procedures for the administration of the estates of those who die without providing for the distribution of their property via a

will. Because those who die intestate have not "made a will," neither have they named an executor to administer their estate. Consequently, the legislature has provided a process for the appointment of the administrator of an intestate estate. As part of that process, Wyo. Stat. Ann. § 2–4–201(a) (LexisNexis 2009) sets forth the order of preference the probate court is to follow in selecting the administrator:

(a) Administration of the estate of a person dying intestate shall be granted to one (1) or more of the persons mentioned in this section. The relatives of the deceased are entitled to administer only when they are entitled to succeed to his personal estate or some portion thereof. They are entitled to administer in the following order:

(i) The surviving husband or wife, or some competent person whom he or she may request to have appointed;

(ii) The children;

(iii) The father or mother;

(iv) The brothers or sisters;

(v) Repealed by Laws 1987, ch. 129, §§ 1, 2;

(vi) The grandchildren;

(vii) The next of kin entitled to share in the distribution of the estate;

(viii) The creditors;

(ix) Any person legally competent.

[¶ 7] The other legislative act that lies at the heart of this dispute is the wrongful death act, found not in the probate code, but in the civil code at Wyo. Stat. Ann. §§ 1–38–101 and 102 (LexisNexis 2009). The wrongful death act provides in relevant part as follows:

§ 1–38–101. Actions for wrongful death which survive; proceedings against executor or administrator of person liable.

Whenever the death of a person is caused by wrongful act, neglect or default such as would have entitled the party injured to maintain an action to recover damages if death had not ensued, the person who would have been liable if death had not ensued is liable in an action for damages....

§ 1–38–102. Action to be brought by personal representative; recovery exempt from debts; measure and element of damages; limitation of action.

(a) Every such action shall be brought by and in the name of the personal representative of the deceased person.

. . . .

(c) The court or jury, as the case may be, in every such action may award such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person for whose benefit such action is brought may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

. . . .

[¶ 8] Inasmuch as this issue involves the intention of the wrongful death statute, we shall apply our customary standard of review:

In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed in *pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in *pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Wyoming Board of Outfitters and Professional Guides v. Clark*, 2001 WY 78, ¶ 12, 30 P.3d 36, [41] (Wyo.2001); *Murphy v. State Can-*

*vassing Board,* 12 P.3d 677, 679 (Wyo. 2000). Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. *Billis v. State,* 800 P.2d 401, 413 (Wyo.1990) (citing *McGuire v. McGuire,* 608 P.2d 1278, 1283 (Wyo. 1980)).

Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions. *Gray v. Stratton Real Estate,* 2001 WY 125, ¶ 5, 36 P.3d 1127, [1128] (Wyo.2001); *Bowen v. State, Wyoming Real Estate Commission,* 900 P.2d 1140, 1143 (Wyo.1995).

*Loberg v. Wyo. Workers' Safety & Comp. Div.,* 2004 WY 48, ¶ 5, 88 P.3d 1045, [1048] (Wyo.2004) (quoting *Board of County Comm'rs of Teton County v. Crow,* 2003 WY 40, ¶¶ 40–41, 65 P.3d 720, [733–34] (Wyo.2003)). Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.

*BP Am. Prod. Co. v. Dep't of Revenue,* 2005 WY 60, ¶ 15, 112 P.3d 596, 604 (Wyo.2005).

[¶ 9] The brevity of the wrongful death act has left it open over the years to judicial interpretation, and that interpretation has not always been entirely consistent. *See* Grant Harvey Lawson, *Reconciling the Wyoming Wrongful Death Act with the Wyoming Probate Code: The Legislature's Wake-up Call for Clarification,* 7 Wyo. L.Rev. 409 (2007). Contributing to that confusion has been the transfer of the wrongful death act back and forth between the civil code and the probate code. *See* 1982 Wyo. Sess. Laws, ch. 54, § 7 [at 94]; 1980 Wyo. Sess. Laws, ch. 54, § 1 [at 370–71]; 1977 Wyo. Sess. Laws, ch. 188, § 1 [at 916]. Rather than recite all the iterations and reiterations of our jurispru-

dence in regard to this issue, we will simply make some observations about the law that should help to show its present status and to illuminate the distinctions between the wrongful death act and the intestate succession statutes.

[¶ 10] Of primary significance is that the separate purposes of the two statutes are entirely distinct. Although the following commentary relates to statutory intestate descent and distribution priorities, as opposed to statutory intestate administrator priorities, the rationale also fits the latter:

The purpose of a statute of descent and distribution is to provide for the transmission of title to property upon the death of the owner intestate and to regulate the division of estates among heirs according to principles of equality and equity. The passing of property upon intestacy is pursuant to a statutory will, which determines the property passing as well as the identity of the recipients, and which is considered to be such a distribution as the intestate presumably would have made if he or she had made a will. The general policy is to follow the lead of the natural affections and to consider as most worthy the claims of those who stand nearest to the affections of the intestate. . . .

23 Am.Jur.2d *Descent and Distribution* § 4 (2002) (footnotes omitted). In other words, the purpose of an intestate succession statute is to provide for distribution of a decedent's estate in a manner that, in all likelihood, emulates the distribution that would have been chosen by the decedent.

[¶ 11] We have identified an altogether different purpose for the legislature's adoption of the wrongful death act:

The purpose of the Wrongful Death Act, "commonly known as Lord Campbell's Act, was to prescribe limitations and a remedy for a cause of action which did not exist at common law, for at common law the cause of action died with the death of the claimant." *Gengo v. Mardis,* 103 Neb. 164, 170 N.W. 841 (1919). Wyoming adopted the wrongful death act in 1871. *Coliseum Motor Co. v. Hester,* 43 Wyo. 298, 305, 3 P.2d 105, 106 (1931). The act was similar to Lord Campbell's Act and was almost an

exact copy of West Virginia's wrongful death law. *Id.* "In the wrongful death statute, the Wyoming legislature has expressed a social policy that favors compensation to ameliorate the certain damage to relational interests resulting from the death of a family member." *Nulle v. Gillette–Campbell County Joint Powers Fire Bd.*, 797 P.2d 1171, 1175 (Wyo.1990).

*Corkill v. Knowles*, 955 P.2d 438, 441 (Wyo. 1998).

[¶ 12] In several cases, this Court has revisited the distinction between these two statutory constructs. For instance, in *Jordan v. Delta Drilling Co.*, 541 P.2d 39, 42 (Wyo.1975) (footnote omitted), *overruled on other grounds by Wetering v. Eisele*, 682 P.2d 1055, 1062 (Wyo.1984), we said the following:

> We see no mandate from the legislature that because an administrator is appointed [under the wrongful death act] that this means only heirs may be beneficiaries to the proceeds derived as a result of the action. The administrator acts but in the capacity of a trustee. *Coliseum Motor Co. v. Hester*, 1931, 43 Wyo. 298, 3 P.2d 105. The Wyoming statute authorizing wrongful death actions is part of the civil code of this state and not a part of the probate code. The designation of an administrator is no more than a statutory device to provide a party for a civil action to collect damages and pay them over to the persons entitled. As said in *Ashley v. Read Construction Co.*, D.C. Wyo., 1961, 195 F.Supp. 727, 729, "We must not confuse an administrator acting as a personal representative with an administrator of an estate whose duties and powers are set out in [the probate code]. * * *" The amount of recovery does not become a part of the decedent's estate. *Tuttle v. Short*, 1930, 42 Wyo. 1, 18, 288 P. 524, 529, 70 A.L.R. 106, 112. This is true even though the administrator or executor must bring the action.

*Bircher v. Foster*, Wyo.1963, 378 P.2d 901, 902.

*See also DeHerrera v. Herrera*, 565 P.2d 479, 482 (Wyo.1977).

[¶ 13] The central theme of these cases is that an intestate estate probate code administrator and a wrongful death action civil code personal representative have different functions and different duties, and that there is not, and should not be, any necessary connection between them. Unfortunately, in *Bircher v. Foster*, 378 P.2d 901, 902 (Wyo.1963), while acknowledging that the wrongful death act then in effect "is anomalous in some respects and leaves certain unanswered questions," this Court held that "the only person who could bring an action for wrongful death was the personal representative of the deceased, *the executor or administrator of decedent's estate.*" (Emphasis added.) We went even further and announced that "there is no authority in this State either by statute or decision whereby a district court, unless sitting in probate, would be authorized to appoint a father as the personal representative of a deceased son for the purposes of a death action." *Id.* at 903.

[¶ 14] Although *Bircher* may have been a viable construction of the statutes as they stood at that time, it is now clear that a wrongful death action is not to be processed under the probate code, but rather is to be processed just like any other civil action. *Bircher* is overruled prospectively to the extent that it requires a wrongful death action to be brought in probate court, and to the extent that it requires a wrongful death personal representative to be the administrator or executor of the decedent's estate in probate.[1] In reaching those conclusions, we find Wyo. Stat. Ann. § 1–38–102(a) to be unambiguous. The statute, which is part of the civil code and which serves a purpose unlike the purposes of the probate code, requires wrongful death claims to be brought by one person, called a personal representative of the deceased person, rather than by the mul-

---

1. In 1963, when *Bircher* issued, there was a connection within the wrongful death act to the intestacy statutes:

   > Every such action shall be brought by, and in the name of, the personal representative of such deceased person; and the amount re-

   ceived in every such action shall be distributed to the parties and in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate....

   Wyo. Stat. Ann. § 1–1066 (Michie 1957).

titude of persons who may be claimants under Wyo. Stat. Ann. § 1–38–102(c). The logical inference incorporated into the statutory language, in order to apply the most reasonable intent to the words used, is that the district court, at the outset of a wrongful death action, must appoint the personal representative in whose name the complaint will be filed. There is no ambiguity within the statute; it is the attempt to incorporate probate code concepts into the statute that potentially creates an ambiguity.[2]

[¶ 15] We must keep in mind the appropriate role of this Court in interpreting statutes. In addition to the general rules of statutory construction set forth above (see supra ¶ 8), we note the particular admonition that "[w]e will not insert language into the statutes that the legislature omitted." *Merrill v. Jansma*, 2004 WY 26, ¶ 29, 86 P.3d 270, 285 (Wyo.2004). Long ago, the federal district court for the District of Wyoming followed that very precept in holding that, inasmuch as Wyoming's wrongful death act does not require the personal representative to be a resident of Wyoming, it was not up to the courts to insert that requirement. *Ashley v. Read Constr. Co.*, 195 F.Supp. 727, 729 (D.Wyo.1961). Today, we merely expand upon that observation by holding that, inasmuch as Wyoming's wrongful death act does not require the personal representative to be the probate estate's administrator or executor, it is not up to this Court to insert that requirement. We reiterate, perhaps unnecessarily, that a reasonable reading of the wrongful death act does not require incorporation of probate code concepts. A wrongful death action may be appropriate even in circumstances where there is no reason whatever to establish a probate, testate or intestate. There may be no estate to probate, despite the need for a wrongful death personal representative. In that situation, it would be absurd to open a probate, and we ascribe to legislation reasonable, rather than absurd or futile intent. *Hede v. Gilstrap*,

2005 WY 24, ¶ 6, 107 P.3d 158, 163 (Wyo. 2005); *Bd. of County Comm'rs of County of Laramie v. City of Cheyenne*, 2004 WY 16, ¶ 27, 85 P.3d 999, 1007 (Wyo.2004).

[¶ 16] Interestingly enough, the district court came to this same conclusion—that the appointment of a wrongful death act personal representative had nothing to do with the appointment of an executor or administrator under the probate code—and he denied Wife's petition primarily on the ground that, with no applicable probate code preference for Wife's appointment under Wyo. Stat. Ann. § 1–38–102(a), Father could continue to serve as the personal representative. Having correctly determined that the wrongful death act appointment of a personal representative was not the appointment of a probate code estate administrator, the district court should have dismissed this probate code action, and should not have allowed Father's appointment to stand.

### If the probate code does not govern appointment of a personal representative under the wrongful death act, what does govern such appointment?

[¶ 17] A significant problem with this case as it presently exists is that, after "[f]inding no statute or persuasive authority stating exactly whom must be appointed to be the personal representative of the decedent for purpose of bringing a wrongful death claim on behalf of the wrongful death claimants," the district court applied no criteria of any kind to the appointment. The appointment of a personal representative is a discretionary act, which discretion should be informed by a review of the purposes of the statute, and by a review of the qualifications of the petitioner in relation to those purposes. In particular, because the personal representative will act as a trustee on behalf of the beneficiaries, inquiry should be made into the relationship of the petitioner to the beneficiaries. The timeliness of the filing of a petition for ap-

---

2. We have focused our attention in this case upon concepts of intestate succession because the decedent in this case died intestate, and because many of the cases that previously have reviewed this statute have applied intestacy concepts to the question of who has a right to be a

beneficiary under Wyo. Stat. Ann. § 1–38–102(c). If probate code appointment procedures applied to Wyo. Stat. Ann. § 1–38–102, however, there is no reason that those procedures would not also include executors performing intestate estates.

pointment, or the filing of a petition contesting that appointment, should be considered, especially given the relatively short period of limitations established within the wrongful death act.

[¶ 18] Even though it is not controlling, one of the factors the district court should consider, particularly if the proposed appointment is contested, is the priority list contained in Wyo. Stat. Ann. § 2–4–201(a). *See Halliburton*, 2007 WY 151, ¶ 8 n. 2, 167 P.3d at 649 n. 2. That statutory list reflects legislative policy as to the order of significant human relationships, and as such, it is a useful tool in considering suitability to act as personal representative. Because the filing of a wrongful death action presupposes that the personal representative intends to pursue a civil action against the alleged wrongdoer, the district court should also consider the petitioner's financial and physical ability to do so, his or her geographic location, his or her intentions in regard to legal representation, and his or her stake in the outcome. Given the potential in a wrongful death action that a multitude of claimants may be coupled with a limited damages recovery, the issue of family harmony or disharmony may likewise be important in the selection of a personal representative.

[¶ 19] In many recent cases, we have discussed judicial discretion and its abuse in the following terms:

> "We recently clarified the definition of abuse of discretion when we said the core of our inquiry must reach 'the question of reasonableness of the choice made by the trial court.' *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' *Id.* (quoting *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236, 1238 (Wash.App.1985)); *Basolo [v. Basolo ]*, 907 P.2d [348,] 353 [ (Wyo.1995) ]. We must ask ourselves whether the district court could reasonably conclude as it did and whether any

facet of its ruling was arbitrary or capricious."

*Cobb v. Cobb*, 2 P.3d 578, 579 (Wyo.2000) (quoting *Thomas v. Thomas*, 983 P.2d 717, 719 (Wyo.1999)).

*MAM v. State Dep't of Family Servs.*, 2004 WY 127, ¶ 10, 99 P.3d 982, 984 (Wyo.2004). In exercising its discretion, the district court must determine each case on its peculiar facts, and must consider all of the circumstances before it. *Shepard v. State*, 720 P.2d 904, 905 (Wyo.1986); *Gale v. State*, 792 P.2d 570, 601 (Wyo.1990) (Urbigkit, J., dissenting). A failure to consider alternatives is a failure to exercise discretion, and is, therefore, an abuse of discretion. *Carroll v. Law*, 2005 WY 44, ¶ 6, 109 P.3d 544, 546 (Wyo.2005); *Steele v. Steele*, 2005 WY 33, ¶ 11, 108 P.3d 844, 848 (Wyo.2005); *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986). Therein lies the rub in the instant case: the district court abused its discretion by not exercising it.

[¶ 20] The only test of who is appointed as personal representative, despite the lack of guidance within the wrongful death act, cannot simply be who first gets to the courthouse. There is some hint in the record that just such a race occurred in this case. In her petition, Wife alleges that Father did not provide her notice of the filing of his petition. Upon remand, the district court should consider that lack of notice, if it is true, and the reason for it, as another factor in making the appointment.

## CONCLUSION

[¶ 21] Wife has standing to contest the appointment of Father as personal representative of the decedent under the wrongful death act because she has a tangible interest in and a personal stake in the outcome of the action. A personal representative under the wrongful death act should be appointed by the district court within that action, rather than in a separate probate action. In making that appointment, the district court should consider the functions and purposes of the wrongful death act in light of the facts and circumstances relating to the petitioner and anyone contesting the appointment.

[¶ 22] Reversed and remanded for dismissal of the probate code action and for such other and further proceedings that may be pursued by the parties.

HILL, Justice, dissenting, with whom GOLDEN, Justice, joins.

[¶ 23] I respectfully dissent. For so long as the wrongful death statute has existed in this state, there can be no legitimate doubt or ambiguity, whatsoever, that by its use of the phrase "personal representative," the legislature intended that it have the same meaning as that expressed in Wyo. Stat. Ann. § 2–4–201:

> § 2–4–201. Persons *entitled* to administer.
>
> (a) *Administration* of the estate of a person dying intestate *shall be granted* to one (1) or more of the persons mentioned in this section. The relatives of the deceased are entitled to administer only when they are entitled to succeed to his personal estate or some portion thereof. *They are entitled to administer in the following order:*
>
> > (i) *The surviving husband or wife, or some competent person whom he or she may request to have appointed;*
> >
> > (ii) The children;
> >
> > (iii) The father or mother;
> >
> > (iv) The brothers or sisters;
> >
> > (v) Repealed by Laws 1987, ch. 129, §§ 1, 2.
> >
> > (vi) The grandchildren;
> >
> > (vii) The next of kin entitled to share in the distribution of the estate;
> >
> > (viii) The creditors;
> >
> > (ix) Any person legally competent.
>
> [Emphasis added.]

[¶ 24] For the first 100 years of its life in the Wyoming Statutes, the wrongful death statute used this language:

> Every such wrongful death action shall be brought by and in the name of the personal representative of the deceased person; and the amount recovered shall be distributed to the parties in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate.

Compiled Laws of Wyoming 1876, ch. 39, § 2; Rev. Statutes 1887, § 2364; Rev. Statutes 1899, § 3449; 1909 Wyo. Sess. Laws, ch. 3, § 1; Wyoming Compiled Statutes 1910, § 4292; Wyoming Compiled Statutes 1920, § 5561; Rev. Statutes 1931, § 89–404; 1939 Wyo. Sess. Laws, ch. 104, § 1; Wyoming Compiled Statutes 1945, § 3–404; 1947 Wyo. Sess. Laws, ch. 132 § 1, Wyo. Stat.1957, § 1–1066; 1973 Wyo. Sess. Laws, ch. 139, § 1.

[¶ 25] The statutes as they now appear first show up in 1977. 1977 Wyo. Sess. Laws, ch. 188, § 1 at 916. In 1980 those statutes were moved to Title 2 (Probate Code). Wyo. Stat. §§ 2–14–201 and 202, 1980 Wyo. Sess. Laws, ch. 54, sub-chapter 14, Article 1 at 370–71. In 1982, they were removed from the Probate Code and put back into the place where they are found today. 1982 Wyo. Sess. Laws, ch. 54, § 7. The apparent reason for that quick about-face is the presence of the statutory provision making the award of damages in a wrongful death suit immune from claims of creditors under the Probate Code. Perhaps, the above history serves to explain some of the problems and unnecessary complexities that have arisen over the years. Grant Harvey Lawson, *Reconciling the Wyoming Wrongful Death Act with the Wyoming Probate Code: The Legislature's Wake-up Call for Clarification*, 7 Wyo. L.Rev. 409 (2007).

[¶ 26] However, the mere fact that confusion in this regard has been created, where none rightfully exists, does not justify applying rules of statutory construction to dilute what the legislature clearly intended by "personal representative:"

> Each word of a statute is to be afforded meaning, with none rendered superfluous. *Jessen v. Burry*, 13 P.3d 1118, 1120 (Wyo. 2000). Further, the meaning afforded to a word should be that word's standard popular meaning unless another meaning is clearly intended. *Soles v. State*, 809 P.2d 772, 773 (Wyo.1991). If the meaning of a word is unclear, it should be afforded the meaning that best accomplishes the statute's purpose. *Radalj v. Union Savings &*

*Loan Ass'n,* 59 Wyo. 140, 138 P.2d 984, 996 (1943).

*In re MN,* 2007 WY 189, ¶ 4, 171 P.3d 1077, 1080 (Wyo.2007). The phrase "personal representative" is used several times in Title 1 of Wyoming Statutes Annotated and elsewhere throughout the statutes, as well. In all instances, except a limited few, its meaning can be readily traced to § 2–4–201(a) (see Wyo. Stat. Ann. §§ 9–1–103, 9–1–207(b), and 17–16–850 for the exceptions).

[¶ 27] Instead of accepting the meaning that is clearly intended by the governing statute, the majority would turn the appointment of the "personal representative," in a wrongful death case, over to the broad discretion of the district court, which essentially means that the statutory priority generally accorded to a spouse (or spouse's designee) disappears. The rule that I espouse in this dissent is the most reasonable and rational resolution available to this Court. In support of that proposition, I refer the Court to 22A Am.Jur.2d *Death* § 81 (2003):

> According to the provisions of many wrongful-death statutes, the persons for whose benefit the action may be maintained are divided into classes based on their natural dependency on the deceased. The right of action inures for the benefit of the first preferred class, if there are in existence any beneficiaries belonging to that class, and, if there are none, then for the benefit of the class next in line of preference. . . .

> Generally, the surviving spouse and children are the first preferred, then follow the parents and siblings. . . .

> The laws of intestacy, as set forth in a probate act, may be the means for identifying the class of eligible beneficiaries to wrongful-death awards.

[¶ 28] The majority opinion misuses the applicable rules of statutory construction so as to perpetuate irrational "complexities" and to create new "ambiguities" where none exist. Of greater significance to the instant facts, it deprives the surviving spouse of her "entitlement" to serve as the personal representative in this wrongful death action. I recognize that there may be circumstances where the surviving spouse should be disentitled from serving as personal representative (e.g., is not mentally competent), but that is a matter to be called to the attention of the district court in a timely and appropriate manner. In this case, Father has had three opportunities to raise any issues with respect to Wife's "entitlement" to serve. In his initial petition he makes no mention of Wife, other than to include her name as fifth in line as an heir. In that same petition, Father made no mention of his relationship to the deceased, but apparently that was "divined" from sources extraneous to the court record. In his reply to Wife's petition to be substituted for Father as personal representative, Father makes no mention of, nor does he state a basis for, Wife's disqualification. In addition, no ground for disqualifying Wife was urged at the hearing into Wife's petition and Father's objections thereto. I can see no reason why this Court should allow Father a fourth opportunity to attempt to deprive Wife of her statutory entitlement.

[¶ 29] I would remand this matter to the district court, with directions that Wife be substituted for Father as the personal representative in the wrongful death action. Such a substitution would have no effect on the applicable statute of limitations. See generally *Chavez v. Regents of the University of New Mexico,* 103 N.M. 606, 711 P.2d 883 (1985) (where wrongful death action is filed by a person other than the personal representative within the statute of limitations, the failure to appoint a personal representative prior to the running of the limitations period does not bar the suit); Nickay Bouchard, *Necessity of the Personal Representative Status in Wrongful Death Actions: Fact or Fiction?,* 17 N.M. L.Rev. 377 (1987) (better practice is to obtain personal representative's appointment before limitations period expires).